312-0463 Thomas J. Brady and Jennifer A. Brady, Appellees Michael Maddenly versus the Regional Board of School Trustees et al. Appellant William Gleason. Mr. Gleason. Good morning, Your Honors, and may it please the Court, Counsel. My name is William Gleason and I represent the Appellant, Newark Community High School District 18. Your Honors, this case presents a situation where the petitioners attempted to detach their property from the Newark Community High School District and have it placed into the Morris High School. There was a decision by the Regional Board of School Trustees of Brundy and Kendall County which was unanimous in that it denied the detachment petition. The petitioners had such appeal to the Circuit Court who reversed that decision which brings us today before Your Honors. I believe that the important part of the question from my client's perspective is that the decision of the Regional Board of School Trustees should not be overturned very lightly. If you look at Article VI of the Illinois School Code, this is essentially the only function of the Regional Board of School Trustees. It's all that they do and I believe that the Supreme Court in Carver and Oakdale has made it very clear that the judiciary is ill-equipped to function as a super school board in determining the complex interests of schools and pupils when a detachment proposed. The decision to grant is best left to the local determination of the so-called educational experts. And with that in mind, Your Honors, I think that you need to look at the test that's laid out in Section 7-6 and by the Illinois Supreme Court cases in Carver and Oakdale and determine whether there's any evidence in the record which would support the Regional Board's decision to deny the detachment petition the grades. And with all due respect to the petitioners, I believe that there is sufficient evidence for you to uphold that determination. As Section 7-6 says and as the Oakdale Court teaches us, there must be an eye toward the educational benefits of the students that's kept at interest at all times. That is the overriding concern that the Regional Board of School Trustees is looking at when they're making a decision with respect to detachment. The Carver case lays out six separate factors which the court can consider and determine whether there was sufficient evidence to grant or deny a detachment petition. The one is to compare the school facilities and curriculum. The next is to determine the distances that the students will travel to and from school. The third is the effect on the detachment on state standards of recognition, that is whether they'll have sufficient money to be soluble pursuant to the standards set forth by the Illinois State Board of Education. The fourth is what tax revenues will be lost and gained. And then there's two additional factors which can be considered which are called the whole child and the community of interest factors. I won't spend a lot of time on paragraphs 3 and 4 because the amount of money here is $1,700 and I believe it's pretty clear under the court's holdings that the amount of money that my client stands to lose is not sufficient enough standing on its face to deny the detachment petition. However, it can be considered a detachment that they will lose tax money but it's not enough to deny it on its very face. So I think factually the first thing that we need to look at is the record with respect to the curriculum and the educational opportunities that can be provided to the children. At the time of the detachment hearing, the Brady's son had already started the process of trying to enroll into Morris High School as a tuition-based student. And they had created a schedule of classes that would be offered and available to him to take during his freshman year. His father testified unrebutted at the hearing that those same exact classes, every single one of them, could be offered at the Newark High School should he choose to attend there. The superintendent from Newark testified. She testified that their curriculums were essentially the same. All the core classes, everything educationally that the students could want to get from Morris they could also get from Newark. There was some testimony that Morris had more classes, meaning they had more sections of the classes. But you're comparing a school district with approximately 990 students in Morris with a school district with approximately 202 students in Newark. So obviously there's going to be more classes and larger facilities to accommodate larger student bodies. The evidence in the record also demonstrates that the Newark High School has a higher graduation rate than the Morris High School. It also demonstrates that they have slightly higher standardized test scores. So I think educationally the record is pretty clear that the core curriculum classes and educational opportunities are the same. The major glaring distinction that was raised by the petitioners and that they spent a lot of time and that the record really speaks to is the lack of a football program at Newark Community High School District 18, whereas Morris has a pretty well-renowned football program. So the petitioners, and I think this court needs to narrow it down, is could the regional board of school trustees have made the determination, was it within their authority to make the determination of whether simply having access to a football program is enough of an educational benefit to require detachment in every case? And I think the answer is overzealously no. That is their determination to make. They're the ones there that are sitting there. They know the educational programs. They know the communities. And they're in a position to determine whether or not simply having access to football is enough of an educational benefit to require detachment. Just so it's clear, we're reviewing the school board's, the board of trustees' decision not to have it in the trial court, right? Yes, Your Honor, that's absolutely correct. And I think the case that's cited in the briefs by both parties, it's the Board of Education School District 154 case, kind of drives this point home with the standard of review that's in question here. In that case, a student wanted to detach from one school district to another because he was a nationally ranked and renowned tennis player. And basically the curriculums were the same, the distances which we traveled was the same. The only thing that was there was he wanted to play tennis. The school district where he was going didn't have it. And the school district where he wanted to detach had it. There was also some evidence in that case about the fact that he had been removed from the school where there was tennis and placed in this other school. He had suffered academically. His grades had gone down. And basically the appellate court in the fourth district in reviewing that case said, look, there's enough evidence here for the court to withhold the detachment under a manifest way to the evidence standard. So I think the flip side of that question also must be true then. The regional board of school trustees could also make the decision that, look, just having access to tennis or football on its face is simply not enough to require a detachment. The evidence has to be more of a benefit, more of a showing of a benefit. And really when you look at the evidence here, the only evidence is there's no football. That's the big issue that's here. That's not what the analysis from the trial court's point of view was suggesting. I mean, I know we're reviewing the board's decision, but in the trial court's written opinion, the trial judge goes through a lot of different factors. And it's not just football. He talks about a variety of things that are found in the case law and the statute and so forth. Your Honor, well, I'm not sure I agree with the trial court's order, but I'll do my best to recreate what I believe the trial court would like. I'm not trying to be agree or not agree. I mean, but in the analysis, we're not just talking about football. I believe in his analysis, he also analogized about the whole childhood community of interest factors, which I can address. And I believe he also looked at the need for the students to travel to a vocational school should they decide to pursue those courses of education. In the Morris School, they have the vocational program on site. And the summer programs and so forth. Well, there was a summer school program that he was enrolled in, and in that particular year, Newark hadn't offered a summer program. But they had offered the same program the year before, so they just fluctuated their summer programs that they offered. They were offering driver's education, if I recall the record correctly, for that year. But I think what the trial court did, and what I think he did improperly, was he looked at and analogized the fact that they would have to travel further to obtain these vocational classes. And I think that the trial court did that improperly for a couple reasons. First of all, there's no evidence in the record that the students were going to take the vocational classes. The evidence in the record was that the father had taken the vocational classes and had enjoyed them. But there was no evidence that the students were going to intend to enroll them. The other evidence in the record that was clear and unrebutted was the students weren't eligible to take the vocational classes until their junior year at either high school. So from that perspective, the trial court's order was somewhat speculative to suggest that three years from now, these kids might take these. Well, three years from now, your honors, Newark Community High School may have vocational classes on grounds. In three years from now, they might have a football program. So for the reasons that we've put in the brief, we believe that was somewhat speculative with respect to the trial judge guessing what would go on in the future and creating a harm or a benefit to the kids that led to his conclusion that they should be able to have the detachment and that the regional board's decision was clearly erroneous or, in his order, was against the manifest way of the evidence. Well, isn't the oldest son, a high school age child, isn't he going to school in Morris? Yes, your honor. At the time of the hearing, he had enrolled, and it's my understanding that he's enrolled as a tuition-based student at Morris. So he's still going to Morris. The question is, is the property, you know, as far as effect on the student's educational opportunities, he's going to school in Morris. The only issue is, is the property going to be detached? Correct. He's able to obtain the services at Morris if he chooses to. He's just required to pay tuition to do it. And I think that was where I was going to head with my next point, was with respect to the whole child factors and the community of interest factors, which the trial court did discuss as well. And what those factors are getting at is whether there's an identification of the petitioning territory with the district to which detachment was sought, and that there's a corresponding likelihood of an increase in extracurricular activities. And your honor, I think that this whole test of the whole child and community of interest comes from the golf case in the Illinois Supreme Court. And in golf, there was an entire village, and these kids could not access the park district programs that were on the school, after the school date, unless the detachment went through. Otherwise, they could never get to the programs to take advantage of them. And the Supreme Court, looking at that, said, well, we think that's important. These kids are all saying they want to participate, but they can't. They're barred from it. In this case, the petitioners didn't put any evidence before the regional board that if the detachment doesn't go through, that they wouldn't be able to participate in anything. It was just, hey, we bank in Morris. We shop in Morris. But the distinction between Morris and Newark, Newark is a very, very small town. They're talking about shopping at super Walmarts and these huge box stores that are in Morris. Newark doesn't have that. So to suggest that there's more of a community of interest, because you can shop there, and there's bigger stores, I think that kind of flies in the face of the Oakdale holding, frankly. But I think the more important thing is, if you look at this court's holding in Eagle v. Hamilton from 1977, they looked at a very similar factual situation, which the petitioners have. They lived in Morris for many, many years. And then they decided to move to this property that put them in the Newark Community High School District. So of course they have ties to the Morris community. They lived there for years. They testified how their kids went to the pool and went to all these programs in Morris. Of course they did. They were Morris residents. But they never put on any evidence that suggested that should the detachment proceeding not go through, that they wouldn't be able to take advantage of these things. There was no evidence like that at all. Basically, the evidence is they maintained their family and their connections in the community, which they've lived for a very long time. That's to be expected. And that doesn't show a community of interest under the Eagle case. And I think for that reason, I think the trial court's analysis of that factor was erroneous. The only other item that I think is really bearing here is there's some debate about the distances. I think the record bears out that there's an additional mile that the students would have to travel to go to Newark as opposed to Morris. But I believe that the cases which you cited in our briefs before your honors demonstrate that a mile is really a negligible difference. And I think it's even more of a glaring difference in here because the students are going to get bused either way. There's a discussion of the FOSDIC case that I'm sure the petitioners will address with you, which have been addressed by both parties in the case, and to suggest that, well, when there's an increase in travel time, it can be enough to grant the detachment petition. But in this case, there's a mile difference. There's no discussion about how long the students would be on the bus either way from one route or the other. So it's not to say, such as in FOSDIC, there was a 45-minute commute as opposed to a 5-minute commute. There's no evidence like that. Well, these petitioners, they built their house at the very tip of the Newark school district, right? They built it along the boundary line between Newark and Morris, yes, Your Honor. Across the street is the other district. Yes, Your Honor, and that's the only way we get to a detachment. That's the only way we get to a detachment proceeding, though, is if the line can be contiguous. So that's always the case in every detachment hearing. Correct. Counsel is two minutes. Okay. Unless the Court has any questions, I'll reserve the remainder of my time. You know, I've got one last question. Sure. Dealing with the summer program, I thought the oldest child had some English. Wasn't there some English program? Your Honor, there was some testimony in there about the oldest child had had some deficiencies in English and that there was for the English classes in the freshman and sophomore classes at Morris as opposed to Newark, the students were all in the same class. But the evidence was also in the record and unrebutted that if that was the case, if a student had difficulties with English, they would be assigned a one-on-one aide at Newark to help them with their progress and ensure that they got every bit of instruction that they needed. And I think if you look at the Carver case, there was a very similar factual situation there where the one school where they sought detachment, there was an at-risk program in the school where they were staying. There was no at-risk program, but they said, look, we will help our special education students and we'll give them the help that they need. And the Supreme Court, in analyzing that situation, said, well, you never gave them an opportunity, so you can't really show that there's a harm, especially when there's evidence that they will make the gains. So they did attend, the oldest son did attend the summer program. But your point is also the record shows that there could have been an alternative approach. Correct. Thank you, Your Honor. Thank you. Mr. Manningly, welcome again. Thank you, Your Honor. To please the Court, I'm Michael Manningly. I'm representing Thomas and Jennifer Brady. Mr. and Mrs. Brady are present in court and are sitting behind me to hear the argument today. Counsel, thank you for your presentation. The order of the Grundy County Circuit Court must be affirmed as it's supported by the manifest weight of the evidence. Well, whose order are we reviewing here? Is this an administrative review? Administrative review. Don't we review the order of the administrative agency? You would review the order of the court, the circuit court, as it passed on to you, who reviewed the decision of the administrative agency. But, yes, you have the ability to look de novo, to apply the facts of the record to the law. So you have both authorities under the case cited in the briefs. So I ask you to affirm the circuit court's decision to reverse the Regional Board of School Trustees' decision because it was supported by the manifest weight of the evidence, the court's decision, and the decision of the Regional Board of School Trustees was clearly erroneous. So you'd agree that then, to reverse the decision of the Board of Trustees, that their decision had to be clearly erroneous. Correct. A standard lesser than against the manifest weight. But clearly erroneous is a pretty tough hill to climb, isn't it? I believe we've met that standard. I believe the record bears that out and it's supported by the record. I understand that it's a tough standard. But, as courts have said, you're just not supposed to be a rubber stamp for the administrative agency if the facts do not support the decision of the administrative agency. And in this case, I do not believe they do so, and the circuit court also found that to be the case, that in weighing the seven factors that are supposed to be weighed, they all weighed in one manner or another in support of the Brady's petition. Certain degrees, yes, but they all weighed in favor of granting the petition. And that is the position that I take here today before this court. As stated by the other counsel, there are seven factors that are required by the court to review with respect to a petition for detachment and annexation in a case that's in front of the court. Those seven factors, though characterized by other counsel as six, are the difference between school facilities and curriculum, the distance between the plaintiffs or the detachment area and the school, the effect detachment would have on the district to meet state standards of recognition, the impact that boundary change would have on tax revenues, the identification that the area detaching has with the area that it's annexing to, the likelihood that the children and the parents would both participate in school activities if the annexation is granted, and also the court is supposed to consider the convenience and personal preference of the parties. That is a point that the other counsel did not bring to the attention of the court. As conceded, or at least I heard conceded by counsel for the other side, the issue of state recognition and revenues generated are not something that they can argue and have been found by prior courts consistently not to be a basis for denying the Brady's petition. Neither Morris nor Newark will be affected. There are state standards of recognition. Newark will not be forced to close, will not have to fire teachers, will not have to reorganize classes, will not have to do, this detachment will not impact the school at all. I mean that's the non-issue in this case. Non-issue. The distance from the schools, as pointed out in both briefs, it's agreed that the Brady family's property is closer to Morris than it is to Newark. There is some discussion whether that distance is negligible for the purposes of the discussion of the detachment annexation case, but the fact remains that it is closer, and the fact remains that in the Davis case, the courts have found that even if the detachment area is further from the proposed annexation district, if you look at the benefits to the educational welfare and the community of interest, those are really the controlling factors, more so than the distance between the property to the two schools. Your opponent is suggesting that this is all about football. My point is no, it's more than football. I'm going to get to that. That's how it would like to be characterized by my opponents. What was brought to the court and the finding of the regional board of school trustees was that Morris offers a greater curriculum opportunity and variety, an extracurricular opportunity and variety, than Newark does. It has a greater college preparatory track and vocational educational center. If we apply that, if that's controlling, wouldn't you detach every piece of property out of the Newark district that's on the Morris side of town? That is not correct. You have to go to the seven factors and make sure that they apply in each case. In this case, the seven factors do apply and weigh in favor of the Brady's. Each other petitioner would have to come before this court and prove that they have met that seven-factor test. So I submit to you that despite the arguments and the time spent in the administrative hearing and in the lower court arguing about football, football is not the only issue here. It is one component of extracurricular participation that would be an enhancement for the two Brady children and their parents and points to the development of the community interest and the whole trial standards that should be being evaluated and determine whether or not this petition should be granted. Also, it should be looked at, as mentioned by the court, that Morris offered a variety of English courses that would assist the older Brady child, who had a learning disability when younger with respect to comprehension of reading, and that the Morris school district had the opportunity to present more opportunities in the English classes than the Newark classes. As pointed out by my appointed opponent, Newark did indicate that they would try to facilitate in that situation and appoint tutors to do other things to accommodate that need if necessary. Where is the oldest Morris child going to school? He is presently a student at Morris High School. So even without a tasks, he's got that educational opportunity? Yes, but at a cost. Where this property is located, the property owner is paying taxes. The property owner is now presently paying taxes to the Newark school district and paying tuition to the Morris school district. I point out to the Burnage case that was cited in my brief that if all things are equal in determining whether or not a petition for detachment or annexation should be granted, the taxpayer's preference should be the one that's given consideration. I say here that all things are equal, that Morris is the better choice and meets the community interest and the whole child test for the Brady family and therefore should be the school district from which they are annexed. But at best, if they are equal, then Morris is their choice and as the taxpayer, that's where their taxpaying dollars should be paid to and their children should be allowed to attend that school district. With respect to the identification of the area for the annexing district, the record is full of information about how the Brady family has historic ties to the community of Morris and to Morris High School. Can I get one clarification? Yes, sir. As far as the cost factor that was discussed previously, the taxes are about the same, aren't they? You're talking about the tax rate versus the assessed valuation? The taxes generated to either district will be about the same and I'll say, Your Honor, that the taxes generated from the property that we're talking about in this petition aren't enough to educate one child for one year. So really the cost factor, the difference is the tuition that you're paying for each child? That is correct. That is correct. And that would be the cost factor difference? And that is substantial over eight years of education. Mr. Brady grew up in the Morris area. He attended Morris High School. He's a graduate of Morris High School. His wife, Jennifer, had lived in Morris for 14 years. She worked in Morris before they moved to the property that they're currently at. Jacob and Samuel, the two children involved in this petition, attended schools in Morris in some of the primary grades, but when they moved to the property that they currently reside, they began attending a rural school district called Nettle Creek Grade School. The Bradys have, on both sides of their family, many relatives who reside in Morris. In point of fact, Mr. Brady's father lives about two blocks from the high school. Mrs. Brady's sister and brother-in-law reside about two blocks from the Morris High School. They have other relatives that live in town. Mrs. Brady's mother lives in town. Mrs. Brady's father is in an assisted care facility in Morris. Mr. Brady's mother has passed. Their social friends, their social network, is in Morris. Their religious network and church is in Morris. Their children, while growing up, have participated in youth basketball, youth baseball, youth football, other youth programs, have attended youth programs at the Morris Library. Their taxing body for public library service is the Morris Library. Their taxing body for fire and ambulance service is the Morris Fire and Protection Service. I guess then why do you move to the Newark School District? It was not with their knowledge at the time that they were building their house that they moved to the Newark School District. It was only after they began construction of the house that they became aware that they were moving to the Newark School District. And if you read for what we cited EGLE for originally in this case, EGLE stands for the proposition it doesn't matter if you move, if you are a property owner or have an ownership interest in property, at the time that you file a petition, that's all that's necessary for filing a petition for detachment. So the factors of why they moved and what they did should not be On the other hand, the petitioners have no ties to Newark. They have no relatives there. They have no social friends there. They do not conduct any substantial business there. In the year before the petition was filed in 2011, Mr. Brady remembered going through Newark once to buy gas as he was going to another location. It was the only transaction business. Mr. Brady worked south of Morris for Commonwealth Edison in Bradley, Illinois, and he travels through Morris every day to get to and from work. If his children were attending Morris, he would be able to go to and attend activities that are based in Morris more conveniently than if he has to drive back to home and then go another 10 miles to the Newark School District. That's the last two minutes. In the development of the whole child, there is discussion or was some discussion about the McHenry case. I want you to look at the McHenry cases and the Fosdick case. I believe the Fosdick case is controlling in this matter, even though you're supposed to evaluate each attachment and annexation case on its own merits. But if there is a case that is factually similar to this case, it is certainly the Fosdick case. The McHenry case is cited, and also the cases of Ottawa Township High School and the others cited in the brief. The fact that a child or children will participate in extracurricular activities at a higher level if they go to the annexing district versus the detaching district, that is a benefit to the whole child, and it's a benefit to the community which is going to annex the community of interest. And if those, by that enhancement and that recognition, there is an enhancement, then the petition should be granted unless Newark can point to some detriment in the other four categories, the first four categories, that it's going to be experiencing as a result of the petition. They did not do so and cannot do so. Therefore, the community interest and whole child factors should be controlling. Those factors weigh in the benefit and for the Brady children and the Brady family, and the annexation, as requested, should be granted. Well, and again, it's not our decision to make de novo, right? If we were deciding what we wanted, it's a matter of whether the decision of the board of trustees was clearly erroneous. I have to go back to my brief. I know there's one deal. If it's an issue of law, it's de novo. If it's an issue of fact, you have to go with the findings. But I also read the findings of fact of the regional board of school trustees. If you read the findings of fact, I expected I was going to win the decision. How can you be saying that if there's a better curriculum opportunity, better vocational opportunity for these students, more expensive extracurricular opportunity, that they should not be going where that opportunity exists? Well, again, though, when you've got a small district like Newark and a bigger school district, wouldn't that be true? That could be said of every student in the Newark school district, that they would have better opportunities if they were going to school in Morris because of the larger, the bigger school. But they've got to go back and apply all seven factors. There is benefits and protections. You have to look at Newark as over 100 square miles in size as a school district. We're talking about 2 1⁄2 acres here. We're having a very marginal impact. And if someone wants to make the argument that you're taking up your honor, they have the right to do so, but I don't think that would be effective because they have to meet the seven standards that are set out by the Supreme Court with respect to a petition and annexation case. Thank you. Thank you. To the court, I ask you to affirm the decision of the circuit court reversing the decision of the regional board of civil trustees. Mr. Gleason. Thank you, your honor. You're welcome. Just a couple of points to briefly respond to. At the outset, council discussed the findings of fact by the regional board. I would submit to your honors that there was no findings of fact by the regional board. What you're looking for is whether there's evidence in the record to support the denial. If you look to the record, pages 590 through 596, specifically page 590, it's cast in the form of a resolution that says, we are going to approve the detachment petition, and it says Exhibit A is defining the facts that we make. And then it's put to a roll call vote, and there's six nay votes. So from my perspective, they never adopted the findings of facts because they're attached to a resolution that was voted down, and the resolution on its face says the detachment petition is granted, and they voted against that. So the concept here is whether there's any evidence in this record that your honors have to support their decision to deny the detachment petition. So I think that's an important thing that the court should consider. I do agree with Justice Smith that this is a clearly erroneous decision based on the fourth district case, and I think that it's fair because there's a mixed question of fact and law here. They're taking a statutory standard, and they're taking facts that are being applied to it. So I believe that your review should be on the clearly erroneous standard. Counsel mentioned just a couple cases that I wanted to briefly address with the court. The first is he says that the Davis case says if the curriculum or the educational benefits are so overwhelmingly in favor, if there's a further distance that the kids have to travel, it's irrelevant. The Davis case, it talks about the fact that they wanted to attach to a school district that's a little bit farther, but the court never tells us what the distance is, but says it's not substantial. But then it notes that in the school from which the detachment was sought, there was no art, no drama, no agriculture, no foreign language, no gifted classes, no college preparatory classes. That's a substantially different case than we have here, your honors. And with respect to the Fosley case, I would strongly suggest that it's not as controlling as the petitioners would suggest. In that case, there was a difference in travel times between five minutes, because mom was able to drive the kids to the one school and wouldn't be able to drive them to the other school, so they'd have to get bussed. It would be a 45-minute bus ride as opposed to a five-minute car ride with mom. The distance there was 4.7 miles as opposed to one. And in fact, one of the kids there, if they didn't get the detachment, he had to quit a job that he had gotten, and he had said, look, if I can't go to school there, I'm not going to school anymore. I'm dropping out. So the educational benefit to that kid alone was substantial. There was also some evidence with respect to some special education students who couldn't receive services in the other school district with respect to their food, and they couldn't meet and go to daily or weekly doctor's appointments that they needed due to the severe disabilities that they had. So I would submit to your honors that the Fosley case is not controlling and that this case is much more substantially close to evil. The only difference between this and evil cases in evil, the distance to the detaching school district, was actually further. But factually, everything else pretty much lines up. It's the same school. It's the same curriculum. It's the same educational opportunity. And this court said that that wasn't good enough, that the detachment could be denied. And so with those factors in mind, we would ask the court to affirm the decision of the regional board and reverse the decision of the circuit court. Thank you. We'll be taking the matter under advisement and rendering the decision without undue delay. We'll stand in brief recess for appeal.